

NORTHERN DISTRICT OF TEXAS

**ENTERED**

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

*[signature]*

**Signed February 11, 2008**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ELECTRAN LOGISTICS LTD.** | § | **Case No. 06-32347 HDH-7** |
| | § | |
| **Debtor** | § | |

| | | |
|---|---|---|
| **ROBERT NEWHOUSE** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Adversary No. 07-3004** |
| | § | |
| **WES-TECH LOGISTICS, INC.** | § | |
| | § | |
| **Defendant** | § | |

**MEMORANDUM OPINION**

The Trustee, Robert Newhouse ("Plaintiff"), sued Wes-Tech Logistics, Inc. ("Defendant"),

seeking to avoid, under the Bankruptcy Code and state law an alleged transfer of trade secrets and

confidential and proprietary information from Electran Logistics Ltd. ("Debtor") to the Defendant.

**Memorandum Opinion- Page 1**

Before and on the record at trial, the Plaintiff abandoned his claims under section 548 of the Bankruptcy Code. The remaining claim of the Plaintiff is made solely under state law. The parties entered into a joint pre-trial order in this case, from which the Court adopts the uncontested facts.

This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This Matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) & (O).

**Applicable Texas Statute**

The Plaintiff brings his claims under the Texas Uniform Fraudulent Transfer Act, which provides, in pertinent part:

> A transfer ... incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made, . . . if the debtor made a transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.
>
> ***
>
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

TEX. BUS. & COMM. CODE ANN. §§ 24.005(a) & 24.006 (Vernon 2002).

According to the complaint and statements made at the trial, the Defendant began doing business with certain customers of the Debtor after certain employees of the Debtor were terminated,

and had formed the Defendant. The Plaintiff claims that these actions resulted in a transfer of valuable intangible property of the Debtor.

## Insolvency

The parties have stipulated that the Debtor was not profitable for many months, and, at the time of the alleged transfers, had significant claims against it, including a large unpaid tax claim. The parties have stipulated that, at the time of the alleged transfer, the Debtor was not generally paying its debts as they became due. The Debtor is presumed to have been insolvent, and Defendant did not rebut that presumption. TEX. BUS. & COMM. CODE ANN. §§ 24.003(b).

## Trade Secrets

Plaintiff hangs his hat on certain alleged transfers of trade secrets to Defendant via the start-up of Defendant and furnishing of services to customers with which Debtor was doing business. Recent case law also addresses similar trade secrets claims of the Trustee:

> A trade secret is any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003). To determine whether a trade secret exists, Texas courts employ a six-factor test: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the east or difficulty with which the information could be properly acquired or duplicated by others. *Id.* Misappropriation of trade secrets is shown by proof: (1) that a trade secret existed, (2) that the trade secret was acquired through a confidential relationship, and (3) that the defendant used the trade secret without authorization from the plaintiff. *Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256, 1262 (5th Cir. 1987). The court finds that BNE did not have any trade secrets or confidential information and none were transferred to defendants.

*In re Bob Nicholas Enter., Inc.*, 358 B.R. 693, 705 (Bankr. S.D. Tex. 2007).

In the present case, according to the testimony offered at trial by the Defendant, the information regarding client names is available in the marketplace. In fact, the information is largely available on the internet and in the phone book. Also, the Court notes that a large number of the names listed on Electran's client list are national companies. Many employees, including drivers for the Debtor, were aware of Debtor's customers' names. Further, witnesses for Defendant testified that they did not use any confidential client profiles, rate books, business plans, etc. obtained from Electran in seeking business. The employees who left the Debtor were not subject to noncompete agreements, and all three of the Defendant's witnesses testified that they did not enter into confidentiality agreements. However, even the confidentiality agreements contemplate that "confidential and propriety information" would not include information readily available to the public. *See,* Plaintiff's Exhibits 1-3.

Based on the record made at the trial, this Court concludes that there was not a transfer of trade secrets and confidential and proprietary information from the Debtor to the Defendant which may be avoided under Texas law.

### The Transfer of Good Will

At trial, Plaintiff offered expert testimony that the Defendant has transferred "good will" of the Debtor valued at approximately $123,000.00, consisting of some fourteen customer contacts and relationships with whom Defendant began doing business after its inception.

According to recent case law on this topic:

> The question of whether good will does or does not exist is one of fact. *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 933 (Tex. App.–Hous. (1 Dist.) 1993); *Taormina v. Culicchia*, 355 S.W.2d 569 (Tex. Civ. App.–El Paso 1962, writ refused n.r.e.). ('The question of whether good will does or does not exist is one of fact for the jury to decide.'); *Sanderfur v. Beard*, 249 S.W. 274, 276-277 (Tex. Civ.

App.–San Antonio 1923) ('The charge of the court did not submit to the jury any issue to find as to whether there existed any good will that passed by the sale, whereas the court assumed on this issuable fact, strenuously contested, as to whether there was any, to hold there was, and thereby instructed the jury to determine its value. Appellants had a right to have the jury pass on that issue.')

Texas law provides that goodwill does not exist apart from a reasonably profitable business. *Sanderfur v. Beard*, 249 S.W. 274, 276-277 (Tex. Civ. App.–San Antonio 1923) ('A profitable business may exist unsupported by good will, but good will cannot exist as far as value is concerned unconnected with a reasonably profitable business.'); *Taormina v. Culicchia*, 355 S.W.2d 569 (Tex. Civ. App.–El Paso 1962, writ refused n.r.e.) ('The value of the "good will" of a business depends upon the fixed and favorable consideration of customers arising from an established and well-known and well-conducted business.')

*In re Bob Nicholas Enter., Inc.*, 358 B.R. at 703.

The evidence offered and stipulated does not establish the existence and value of good will for the Debtor at the time of the transfer. The Plaintiff failed to show that, at the time the transfers were made, the Debtor was established, well known, and well conducted. In fact, given the stipulations made, it appears that the Debtor was in financial difficulty at the relevant time.

Accordingly, within ten days, Defendant shall submit a judgment consistent with this opinion.

###End of Memorandum Opinion###